STATE OF CONNECTICUT *v.* ENRIQUE C. GONZALEZ
(13442)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued January 5—decision released March 21, 1989

*Robert P. Dutcher,* for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, was *Frank Iannotti,* former assistant state's attorney, for the appellee (state).

GLASS, J. The dispositive issue in this case is whether, under General Statutes (Rev. to 1985) § 14-227a,[1] a defendant charged with operating a motor vehicle while under the influence of alcohol or drugs is entitled to a jury instruction on the lesser offense of operating while impaired as set forth in General Statutes (Rev. to 1985) § 14-227a (b).[2] The defendant, Enrique C. Gonzalez, was found guilty by a jury of operating a motor vehicle in violation of General Statutes (Rev. to

---

[1] In this opinion, our analysis is confined to the provisions of General Statutes §§ 14-227a and 14-227b as revised to 1985.

[2] General Statutes (Rev. to 1985) § 14-227a (b) provides: "No person shall operate a motor vehicle on a public highway of this state or an any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor. A person shall be deemed impaired when at the time of the alleged offense the ratio of alcohol in the blood of such person was more than seven-hundredths of one per cent of alcohol, by weight, but less than ten-hundredths of one per cent of alcohol, by weight."

1985) § 14-227a (a).[3] In *State* v. *Gonzalez,* 14 Conn. App. 216, 541 A.2d 115 (1988), the Appellate Court rejected the defendant's claim that the trial court erred in denying his request for an instruction on the lesser offense of operating while impaired. We granted the defendant's petition for certification limited to the following issues: "Did the Appellate Court erroneously conclude (1) that General Statutes § 14-227a (b) (Rev. to 1985) provides that one commits the offense of driving while impaired only when one's blood alcohol ratio falls between .07 and .1 percent, and (2) that driving while impaired is not a lesser included offense of driving while under the influence?" We affirm the Appellate Court's judgment.

The facts are fully set forth in *State* v. *Gonzalez,* supra. In brief, on the night of June 21, 1985, the Connecticut state police were conducting a "spot check" for drunk drivers at the West Haven toll plaza on Interstate 95. At approximately 11 o'clock, the defendant pulled into the toll plaza in the eastbound lane. State police trooper Robert Peterson detected a strong odor of alcohol emanating from the defendant, and directed him to drive his car to an adjacent parking lot. At the trial, Peterson testifed that the defendant's walk was unsteady, his speech slurred, his eyes glassy, and his face flushed. Peterson conducted four field sobriety tests, including a test requiring the defendant, who claimed he knew English, to recite the alphabet in English and Spanish. The defendant was unable to recite the alphabet in either language. Peterson con-

---

[3] General Statutes (Rev. to 1985) § 14-227a (a) provides: "No person shall operate a motor vehicle on a public highway of this state or any any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property while under the influence of intoxicating liquor or any drug or both."

cluded from the defendant's performance of the tests that he was intoxicated, and placed him under arrest for operating while under the influence in violation of General Statutes (Rev. to 1985) § 14-227a (a). After the defendant had been advised of his rights, he told Peterson that he had consumed six beers and one half pint of rum on his drive from New York City to the toll plaza. Peterson testified that he had observed several empty beer cans and an empty rum bottle on the front seat of the defendant's car. There was no evidence of the defendant's blood alcohol content admitted at the trial.

The defendant testified that he had driven his girlfriend from Wallingford to New York City and was returning home at the time he was stopped. He admitted that he had consumed some alcohol during the course of his trip down to New York, but claimed that he had not consumed any on the return trip and, further, that there were no empty alcohol containers in his car. He also testified that he had not told Peterson anything about having been drinking. He further stated that the alcohol he had consumed had not affected his driving and that he had walked without stumbling or swaying. The defendant's sister testified that the defendant had called her between 11:00 and 11:30 p.m. and had asked her to come to the toll plaza parking lot. She testified that when she arrived there, between midnight and 12:30 a.m., the defendant did not appear to be under the influence of alcohol.

I

The defendant submitted a request to the trial court to charge the jury on the lesser offense of operating while impaired and on the meaning of "impaired by the consumption of intoxicating liquor." General Statutes (Rev. to 1985) § 14-227a (b). The trial court declined to instruct the jury as requested. The defendant was convicted as charged and sentenced to ninety days of

imprisonment, execution suspended, two years of probation, and a $1000 fine, plus fees and costs.

The test for determining whether a defendant is entitled to an instruction on a lesser offense is well established. "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) the evidence, introduced by either the state or the defendant, or by a combination of their proofs, justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. *State* v. *Whistnant,* 179 Conn. 576, 584, 427 A.2d 414 (1980)." *State* v. *Tinsley,* 181 Conn. 388, 396–97, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981).

In the present case, a majority of the Appellate Court concluded that the trial court did not err in denying the defendant's request for a lesser offense instruction. It held that a prosecution for the offense of operating while impaired under § 14-227a (b) is only warranted when evidence exists that the defendant's blood alcohol ratio at the time of the alleged offense was greater than .07 percent but less than .1 percent. *State* v. *Gonzalez,* supra, 222. It ruled, therefore, that the defendant's claim failed the third prong of the *Whistnant* test since there was no evidence of the defendant's blood alcohol to justify a conviction under § 14-227a (b). Id., 222–23.

As a predicate to his claim that operating a motor vehicle while impaired under § 14-227a (b) is a lesser included offense of operating while under the influence under § 14-227a (a), the defendant argues that the Appellate Court erred in concluding that driving while impaired under subsection (b) can be proven only with evidence that the defendant's blood alcohol ratio falls between .07 and .1 percent. He claims that the language of subsection (b), which prohibited a person from operating a motor vehicle "while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor," proscribed behavior, and, therefore, a violation of subsection (b) may be proven with behavioral evidence alone. As a corollary to this point, the defendant contends that, because subsection (b) did not require proof of a blood alcohol content within the proscribed range, a defendant could be convicted for violating this section upon proof that his driving was "impaired" in any degree. We disagree.

In analyzing the import of a statute, we first look to its plain language. Where that language is clear and unambiguous, there is no need for interpretation and, hence, no need to resort to extrinsic sources as an aid to interpretation. See, e.g., *Nicotra Wieler Investment Management, Inc.* v. *Grower,* 207 Conn. 441, 455, 541 A.2d 1226 (1988). Our task is to construe a statute as a whole and to harmonize its disparate sections within the bounds of reason. See, e.g., *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 399, 512 A.2d 152 (1986). Further, "[c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant." *State* v. *McGann,* 199 Conn. 163, 177, 506 A.2d 109 (1986).

In reviewing the language of § 14-227a, several distinguishing features between the offense of operating while under the "influence" and the offense of oper-

ating while "impaired" are immediately apparent. Operating under the influence was prohibited by § 14-227a (a), which provided that "[n]o person shall operate a motor vehicle . . . while under the influence of intoxicating liquor or any drug or both."[4] Subsection (b) provided that "[n]o person shall operate a motor vehicle . . . while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor. A person shall be deemed impaired when at the time of the alleged offense the ratio of alcohol in the blood of such person was more than seven-hundredths of one per cent of alcohol, by weight, but less than ten-hundredths of one per cent of alcohol, by weight."[5] Here, we note the obvious absence of any language specifically defining the factor "deemed" to constitute "under the influence" in subsection (a).

General Statutes (Rev. to 1985) § 14-227a (c)[6] provided for the admissibility, under certain specified con-

----

[4] See footnote 3, supra.

[5] See footnote 2, supra.

[6] General Statutes (Rev. to 1985) § 14-227a (c) provides: "In any criminal prosecution for a violation of subsection (a) or (b) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: (1) The defendant consented to the taking of the test upon which such analysis is made; (2) a true copy of the report of the test result was mailed to or personally delivered to the defendant within twenty-four hours or by the end of the next regular business day, after such result was known, whichever is later; (3) the test was performed according to methods and with equipment approved by the department of health services and was performed by a person certified or recertified for such purpose by said department or recertified by persons certified as instructors by the commissioner of health services. If a blood test is taken, it shall be on a blood sample taken by a person licensed to practice medicine and surgery in this state, a qualified laboratory technician, an emergency medical technician II or a registered nurse; (4) the device used for such test was checked for accuracy at the beginning of each workday and no later than the end of each workday by a person certified by the department of health services; (5) the defendant was afforded an opportunity to have an additional chemical test performed and was informed of this right, afforded a reasonable

ditions, of blood alcohol content evidence in any prosecution for violating subsection (a) or (b). Under subsection (c) (7), chemical analysis evidence in a prosecution for operating while under the *influence* was admissible provided that "additional competent evidence is presented bearing on the question of whether or not the defendant was under the influence of intoxicating liquor or drug or both." Here, we note that this "additional competent evidence" provision was conspicuously omitted as a requirement in a prosecution under subsection (b), the operation while *impaired* subsection. Thus, unlike a prosecution for operating while under the influence, in order to admit blood alcohol content evidence in a prosecution for operating while impaired, subsection (c) did not require the production of additional competent evidence.

General Statutes (Rev. to 1985) § 14-227a (d)[7] provided for the evidentiary effect of different ratios of

opportunity to exercise the same and a notation to that effect was made upon the records of the police department, provided the results of the initial test shall not be excluded under this subsection if the police made reasonable efforts to have such additional test performed and such test was not performed within a reasonable time; (6) evidence is presented which demonstrates that the test results accurately reflect the blood alcohol content at the time of the alleged offense, and (7) in the case of a prosecution under subsection (a) of this section, additional competent evidence is presented bearing on the question of whether or not the defendant was under the influence of intoxicating liquor or drug or both."

[7] General Statutes (Rev. to 1985) § 14-227a (d) provides: "Evidence admitted under the provisions of subsection (c) shall have the following force and effect: (1) Evidence that at the time of the alleged offense there was five-hundredths of one per cent or less of alcohol, by weight, in the defendant's blood shall be prima facie evidence that the defendant was not under the influence of intoxicating liquor within the meaning of this section; (2) evidence that at such time the ratio of alcohol in the blood was more than five-hundredths of one per cent of alcohol, by weight, but less than ten-hundredths of one per cent of alcohol, by weight, shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor but such fact may be considered with other competent evidence in determining whether the defendant was under such influence within the meaning of this section; (3) evidence that at such time the ratio of alco-

blood alcohol content. There are two aspects of this subsection critical to our analysis. First, subsection (d) (3) provided that evidence of a blood alcohol content greater than .07 percent but less than .1 percent "shall constitute impairment within the meaning of this section." There were no other references to the term "impairment" in subsection (d). Second, subsection (d) (2) provided that evidence of a blood alcohol content greater than .05 percent but less than .1 percent would not give rise to any presumption "that the defendant was or was not under the influence of intoxicating liquor but such fact may be considered with other competent evidence in determining whether the defendant was under such influence within the meaning of this section." There was no such provision contemplating the use or need of "other competent evidence" in subsection (d) (3) pertaining to "impairment."

A reading of subsections (a) through (d) of § 14-227a makes it clear that the language "deemed impaired" of subsection (b) and "shall constitute impairment" of subsection (d) attached an exclusive definitional effect to the term "impairment" as used in § 14-227a. Further, the admission and consideration of "additional competent evidence" only applied to prosecutions for operating under the influence under subsection (a). Consequently, a defendant could be convicted of operating while "impaired" only when evidence was introduced demonstrating that the defendant's blood alcohol content was greater than .07 percent and less than .1 percent. Because the offense of operating while

hol in the blood was more than seven-hundredths of one per cent of alcohol, by weight, but less than ten-hundredths of one per cent of alcohol, by weight, shall constitute impairment within the meaning of this section; (4) evidence that at such time the ratio of alcohol in the blood was ten-hundredths of one per cent or more of alcohol, by weight, shall be prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section."

"impaired" was defined, by operation of the terms "deemed" and "shall constitute," as operating while one's blood alcohol content fell within the proscribed range, and because the statute contemplated that "additional competent evidence" was necessary only in a prosecution for operating while under the influence, it necessarily follows that "competent evidence" additional to evidence of the defendant's blood alcohol content at the time he or she operated the motor vehicle was immaterial in a prosecution for operating while "impaired" under subsection (b).

The defendant's assertion that one could be proven to be "impaired" on the basis of "other competent evidence," and, therefore, one could violate subsection (b) if one's ability to drive is impaired in any degree, requires an unduly broad reading of subsection (b). Such a reading contravenes the principle that criminal statutes are to be narrowly construed. *State* v. *McGann,* supra.

## II

The defendant also argues that the Appellate Court's conclusion is irreconcilable with: (A) General Statutes (Rev. to 1985) § 14-227a (f);[8] (B) General Statutes (Rev. to 1985) § 14-227b,[9] the "implied consent law"; and (C) our opinion in *State* v. *Hancich,* 200 Conn. 615, 513 A.2d 638 (1986). We consider each of these arguments below.

[8] General Statutes (Rev. to 1985) § 14-227a (f) provides: "In any criminal prosecution for a violation of subsection (a) or (b) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the requirements of subsection (b) of said section have been satisfied. If a case involving a violation of subsection (a) of this section is tried to a jury, the court shall instruct the jury as to any inference that may or may not be drawn from the defendant's refusal to submit to a blood, breath or urine test."

[9] See footnote 10, infra.

A

The defendant contends that the Appellate Court's reading of General Statutes (Rev. to 1985) § 14-227a (b) is inconsistent with § 14-227a (f). Subsection (f) provided that evidence of a defendant's refusal to submit to a blood alcohol test was admissible in prosecutions for either operating while under the influence or operating while impaired. The defendant queries: why would the legislature authorize the use of an adverse inference from a defendant's failure to submit to a test if it did not contemplate that evidence other than blood alcohol content evidence would suffice to convict him of operating while impaired?

The Appellate Court attempted to explain subsection (f) by stating: "It is . . . likely . . . that the legislature knew that blood alcohol evidence which indicates impairment may come from sources other than a test administered by the police, such as a test conducted by a medical expert at the defendant's request. Impairment could thus be established even though the defendant elected not to take the test provided by the police." *State* v. *Gonzalez,* supra, 223–24 n.4.

Whatever the merits may be of the Appellate Court's explanation, we are not persuaded that the language of subsection (f) undercuts the unmistakable intent of the legislature as expressed in subsections (a) through (d) that operating while impaired exclusively meant operating while one's blood alcohol ratio fell within the proscribed range. Because subsection (f) presents us with an ambiguity, an analysis of the pertinent legislative history is in order. *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986).

The relevant provisions of General Statutes (Rev. to 1985) § 14-227a originated in 1983 in Substitute House

Bill No. 6420. See *State* v. *Gonzalez,* supra, 225–33 (*Bieluch, J.,* dissenting) (analyzing legislative history); Public Acts 1983, No. 83-534. The bill initially provided that the offense of operating while impaired was committed when a person operated a motor vehicle while his or her blood alcohol content was .05 percent or more but less than .1 percent. Significantly, the bill also required that "additional competent evidence [must be] presented indicating that . . . the ability of such person to operate . . . was impaired by the consumption of intoxicating liquor." The bill further provided for the admission into evidence of a defendant's refusal to take a blood alcohol test in prosecutions for either operating while under the influence or operating while impaired.

Subsequently, House amendment schedule "A" made the following changes: (1) the floor of the blood alcohol content to establish operating while impaired was raised from at least .05 percent to greater than .07 percent; (2) the "additional competent evidence" provision was struck and the present language that operating with the proscribed blood alcohol content would be "deemed impaired" was added; and (3) a defendant's refusal to submit to a test was now admissible only in prosecutions for operating under the influence. 26 H.R. Proc., Pt. 19, 1983 Sess., pp. 6692–94. Thereafter, however, House amendment schedule "D" restored the original bill's provision allowing for the admissibility of evidence of a defendant's refusal to submit to a test in prosecutions both for operating while under the influence and for operating while impaired. 26 H.R. Proc., Pt. 19, 1983 Sess., p. 6725. As the dissenting opinion below correctly notes, the proceedings contain no explanation for the reappearance of this provision. *State* v. *Gonzalez,* supra, 227–28 (*Bieluch, J.,* dissenting). The House of Representatives, however, subsequently rejected a further amendment, schedule "L," which

would have made the designated blood alcohol content "prima facie evidence" of operating while impaired, replacing the "shall constitute impairment" language that became part of subsection (d). Further, schedule "L" would have restored the original language requiring "additional competent evidence" in a prosecution for operating while impaired. 26 H.R. Proc., Pt. 19, 1983 Sess., p. 6820.

The Senate's proceedings respecting Public Acts 1983, No. 83-534, shed little light on the purpose of the provision in subsection (f) allowing the admission into evidence of a defendant's refusal to submit to a test in a prosecution for operating while impaired. The only relevant comment comes from Senator Owens, who remarked: "It makes the defendant's refusal to submit to a chemical test admissible in court, something that the United States Supreme Court said there was nothing wrong with and made laudatory." 26 S. Proc., Pt. 13, 1983 Sess., p. 4426, remarks of Senator Howard T. Owens, Jr.

Our review of the history of Public Acts 1983, No. 83-534, makes it quite clear that the legislature did not intend to make operating while impaired an offense requiring proof of behavior additional to proof of blood alcohol content. This history demonstrates that the house *twice* rejected a proposal that would have required "additional competent evidence" in a prosecution for operating while impaired. Although the history of subsection (f) is unilluminating, we cannot conclude, in the face of overwhelming evidence to the contrary, that the legislature, by virtue of making a defendant's refusal to submit to a chemical test admissible in a prosecution for operating while impaired, intended that a defendant could be convicted of that offense on any proof other than proof of blood alcohol content.

## B

The defendant also asserts that the Appellate Court's analysis of § 14-227a (b) is irreconcilable with General Statutes (Rev. to 1985) § 14-227b,[10] the "implied consent" law. Subsections (b) through (d) of § 14-227b established that any person arrested for operating while under the influence or operating while impaired who refused to submit to a blood alcohol content test would lose his or her driver's license for a period of six months. Under subsection (d), the commissioner of motor vehicles was required to suspend the license upon receipt of a police officer's report disclosing the operator's refusal to submit to the test. Subsection (c) provided

[10] The relevant portions of General Statutes (Rev. to 1985) § 14-227b provide: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . .

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor . . . refuses to submit to the designated test, the test shall not be given. . . . The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege would be suspended if he refused to submit to such test.

"(c) If the person arrested refuses to submit to such test or analysis, the police officer shall immediately revoke the [license] of such person for a twenty-four hour period and prepare a written report of such refusal. . . . The report shall be . . . sworn to under penalty of false statement . . . by the police officer before whom such refusal was made. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so.

"(d) Upon receipt of such report of a first refusal, the commissioner of motor vehicles shall suspend any license . . . of such person for a period of six months. Any person whose license or operating privilege has been suspended . . . shall automatically be entitled to an immediate hearing before the commissioner. . . ."

that "[t]he report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence . . . or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor . . . . " The defendant, relying on the dissenting opinion below, argues that "[s]uch a sworn report and administrative finding of probable cause for arrest in the event of a blood alcohol test refusal must of necessity relate to an arrest for operation while impaired based upon facts other than the proscribed blood alcohol percentages." *State* v. *Gonzalez,* supra, 233 (*Bieluch, J.,* dissenting).

The defendant's reliance on § 14-227b is misplaced. As the state correctly points out, this statute dealt with the administrative requirements for suspending an operator's license upon his refusal to submit to a chemical analysis. Subsection (c)'s requirement of a sworn report establishing the arresting officer's probable cause did not purport to be anything more than a prerequisite to the distinct administrative action of suspending the operator's license. It had nothing to do with a prosecution for the substantive offense of driving while impaired as defined in § 14-227a.

C

The defendant also argues that in *State* v. *Hancich,* supra, 620, this court interpreted the "deemed impaired" provision of General Statutes (Rev. to 1985) § 14-227a (b) as an evidentiary tool for presuming legal impairment and not as a means of defining the offense. He claims, therefore, that subsection (b) permits a conviction in the absence of blood alcohol content evidence.

In *Hancich,* the defendant was charged under subsection (a) with driving under the influence. The trial court refused to instruct the jury on the lesser offense of driving while impaired. Id., 619. We first observed

that General Statutes (Rev. to 1985) § 14-227a (d) (4)[11] created a rebuttable presumption that a person was under the influence of intoxicating liquor if that individual's blood alcohol level equalled or exceeded .1 percent. Id., 620–21. "While evidence of such an alcohol level was sufficient to establish the state's prima facie case, the defendant was formerly allowed to introduce evidence to show that, despite a blood alcohol level equal to or greater than .1 percent, he or she had not been *under the influence* of intoxicating liquor at the time of arrest." (Emphasis in original.) Id., 621. We deduced from this fact the proposition that "although in the present case the defendant's blood alcohol level was measured at .165 percent, the possibility that she was merely impaired, and not under the influence, cannot be excluded as a matter of law under the former General Statutes § 14-227a (d) (4)." Id. We held, however, that the evidence of the defendant's intoxication "was such as to exclude completely the possibility that the defendant was not under the influence of intoxicating liquor, and operated her vehicle while merely impaired;" id., 621–22; although we noted that "[i]f this were at all a close case, then we might be concerned with the trial court's refusal to instruct on the lesser offense of impairment." Id., 621. Consequently, we determined that the defendant was not entitled to a lesser included offense instruction under *State* v. *Whistnant,* supra. *State* v. *Hancich,* supra, 622.

As the defendant conceded at oral argument, because we concluded in *Hancich* that the defendant was not entitled to a lesser included offense instruction under *Whistnant,* our observation that "the possibility that [Hancich] was merely impaired, and not under the influence, cannot be excluded as a matter of law" was dictum. Consequently, *Hancich* is not controlling in the present case.

[11] See footnote 7, supra.

Because General Statutes (Rev. to 1985) § 14-227a (b) may be proven only by evidence that the defendant's blood alcohol content at the time of the alleged offense was greater than .07 percent and less than .1 percent, and because there was no evidence introduced concerning the defendant's blood alcohol content, a lesser offense instruction of operating while impaired was not warranted. *State* v. *Whistnant,* supra.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.